IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ISREAL FLORES, ) | CASE NO. 3:06CV2805 |
| ) | |
| Petitioner, ) | |
| ) | JUDGE POLSTER |
| v. ) | |
| ) | MAGISTRATE JUDGE HEMANN |
| JESSE WILLIAMS, Warden, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Respondent. ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2). Before the court is Isreal Flores' ("Flores") petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 on August 14, 2006. Flores is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to a journal entry of sentence in the case of *State v. Flores,* Case no. 03CR330 (Wood County 2003).[1] For the reasons set forth below, the magistrate judge recommends that the court deny Flores' petition.

I

The state appellate court reviewing Flores' direct appeal from his conviction in case no. 03CR330 made the following relevant findings of fact and conclusions of law:

---

[1] Flores is also being held pursuant to journal entry of sentence in *State v. Flores*, Case no. 04CR004 (Wood County 2004), a conviction for intimidating a witness growing out of the events in case no. 03CR330. Flores does not raise in the instant petition any grounds for relief related to case no. 04CR004.

{¶ 2} On August 8, 2003, upon execution of a search warrant secured in part by an August 7, 2003, tip received by Wood County Sheriff's Office Task Force Agent Mike Ackley, from confidential informant William Szymanski Sr., Wood County Sheriff's Deputies seized from appellant's residence marijuana and drug paraphernalia. At the time that the deputies arrived, they observed several people entering a vehicle which was in the driveway--two adults and three small children, ages seven years, 23 months, and 15 months. Appellant was present inside the residence. Also observed throughout the residence were children's toys and clothing items, including a baby shoe next to a bag of sandwich baggies and a large "deli-type" scale.

{¶ 3} In his August 8, 2003, affidavit in support of probable cause for issuance of the warrant, Agent Ackley stated that on August 7, 2003, the informant received a "small amount" of marijuana from appellant and that appellant spoke to the informant about having a large amount of marijuana at his house that he wanted to sell. However, subsequent to the search, in his September 29, 2003 officer notes Agent Ackley concluded, "[a]s this investigation continued, Deputy Ackley uncovered information finding that [the informant] did not just receive a sample of the marijuana from [appellant] that he turned over to Deputy Ackley on August 7, 2003. [The informant] actually received one pound of marijuana that he resold for a profit, without telling Deputy Ackley."

{¶ 4} On December 8, 2003, a hearing was held on appellant's motion to suppress evidence seized at the residence based on deficiencies in Agent Ackley's affidavit. In his motion, appellant argued that the information in the affidavit was stale, there was no nexus between the criminal activity and the residence, and the informants lacked reliability. The trial court denied the motion to suppress finding sufficient information in the affidavit to establish probable cause, in part, because the informant was reliable under the totality of the circumstances. Further, the trial court concluded that even if the affidavit did not establish probable cause, the good faith exception to the exclusionary rule applied since the deputies who conducted the search acted in good faith and in an objectively reasonable reliance on the warrant.

{¶ 5} On January 22, 2004, a bench trial was held. Agent Ackley testified that on the evening of August 7, 2003, when the informant initially told Agent Ackley about his contact with appellant, the informant described it as receiving a sample of marijuana from appellant. Thus, at the time of his probable cause affidavit, the informant did not divulge to Agent Ackley that he purchased any marijuana from appellant. After appellant rested, the trial court denied appellant's Crim.R. 29(A) motion for acquittal. In a January 23, 2004 judgment, the trial court found appellant guilty of drug trafficking in marijuana with a specification that the crime was committed in the vicinity of a juvenile. The trial court ordered that appellant serve a term of seven years in prison and that appellant's driver's license be suspended for a period of four years from the date of his release from prison.

{¶ 6} On May 27, 2004, appellant filed a motion for new trial pursuant to Crim.R.

33(A)(6) based on "new evidence" of Agent Ackley's previously undisclosed officer notes.  The trial court subsequently denied this motion.

*State v. Flores*, 2005 WL 1532650, at *1-*2  (Ohio App. June 30, 2005).  The only testimony given at Flores' trial was Ackley's; Szymanski did not testify.  The trial court sentenced Flores to seven years' imprisonment and ordered that his driver's license be suspended for four years from the date of his release from prison.

Flores filed a timely notice of appeal in the state appellate court.  Flores raised seven assignments of error in his appeal:

### FIRST ASSIGNMENT OF ERROR

THE DEFENDANT-APPELLANT'S RIGHT TO DUE PROCESS OF LAW UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WAS DENIED BY THE MISCONDUCT OF THE STATE IN FAILING TO DISCLOSE CERTAIN INFORMATION AND TO CORRECT CERTAIN TESTIMONY DURING THE PROCEEDINGS.

### SECOND ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO OHIO CRIM.R. 29(A).

### THIRD ASSIGNMENT OF ERROR

THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO SUPPORT THE VERDICT.

### FOURTH ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN FAILING TO GRANT THE DEFENDANT'S MOTION FOR A NEW TRIAL.

### FIFTH ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S MOTION TO SUPPRESS.

### SIXTH ASSIGNMENT OF ERROR

THE DEFENDANT WAS DENIED DUE PROCESS OF LAW BY THE CUMULATIVE EFFECT THE STATE'S MISCONDUCT HAD ON THE PROCEEDINGS.

SEVENTH ASSIGNMENT OF ERROR

THE DEFENDANT'S SENTENCE WAS CONTRARY TO LAW.

(Punctuation altered from the original.) The state appellate court affirmed the judgment of the trial court on June 30, 2005.

Flores timely filed a notice of appeal in the Ohio Supreme Court. In his memorandum in support of jurisdiction Flores asserted one proposition of law:

> Proposition of Law No. I: The Court of Appeals applied the incorrect standard in determining whether the State's wilful failure to disclose the information detailed in the September 29, 2003 supplemental police report and failure to correct certain testimony in court denied the Defendant his constitutional right to a fair trial.

On November 23, 2005 the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.

Flores filed a petition for a writ of habeas corpus in this court on November 20, 2006. Flores raises one ground for relief in his petition:

> GROUND ONE: Defendant was denied due process and a fair trial contra the 5th, 6th and 14th Amendments when State prosecutor withheld evidence that impeached [the] State's key witness.

Respondent filed a Return of Writ on March 20, 2007 (Docket #7). Thus, the petition is ready for decision.

II

A. *Jurisdiction*

Writs of habeas corpus may be granted by a district court within its respective jurisdiction:

> Where an application for a writ of habeas corpus is made by a person in custody

4

    under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a) and (d).

Title 28 U.S.C. § 2254(a) provides in relevant part, "[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

Flores was sentenced and is currently in custody within the geographic jurisdiction of the court. This court has jurisdiction over Flores' petition.

B.    *Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings. 28 U.S.C. § 2254(e)(2). There is no need for an evidentiary hearing in the instant case. All Flores' claims involve legal issues which can be independently resolved without additional factual inquiry.

C.    *Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus. 28 U.S.C. § 2254(b) and (c); *Castillo v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. Macklin*, 936 F.2d 790, 793 (6th Cir. 1991). If any state procedures for relief remain available, the petitioner has not exhausted state remedies. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies.  *Anderson v. Harless*, 489 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989).  Federal courts lack jurisdiction to consider any claim that was not fairly presented to the state courts.  *Newton v. Million,* 349 F.3d 873, 877 (6th Cir. 2003).  "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied."  *Picard*, 404 U.S. at 275; *see also Harris v. Reeves*, 794 F.2d 1168, 1174 (6th Cir. 1986).  The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all of the petitioner's claims.  *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

Fair presentment of a claim in a federal constitutional context requires a petitioner to apprise the state courts that a claim is a federal claim, "not merely as an issue arising under state law."  *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner need not cite "book and verse on the federal constitution," *Picard*, 404 U.S. at 278, to apprise state courts that his claim is based on federal law:

> In determining whether a petitioner has fairly presented a federal constitutional claim to the state courts, a habeas court may consider whether (1) the petitioner phrased the federal claim in terms of the pertinent constitutional law or in terms sufficiently particular to allege a denial of the specific constitutional right in question; (2) the petitioner relied upon federal cases employing the constitutional analysis in question; (3) the petitioner relied upon state cases employing the federal constitutional analysis in question; or (4) the petitioner alleged facts well within the mainstream of the pertinent constitutional law.

*Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004); *see also Franklin v. Rose*, 811 F.2d 322, 326 (6th Cir. 1987) (quoting *Daye v. Attorney Gen.*, 696 F.2d 186, 193-94 (2d Cir. 1982)).

6

Flores has exhausted direct appeals for all his claims. Because Flores has no remaining state remedies, his claims have been exhausted.

D.  Procedural default

Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . . not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

If the state argues that a petitioner has procedurally defaulted, the court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. . . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). A default will also be excused if petitioner demonstrates that not excusing the default "will result in a fundamental

7

miscarriage of justice." *Coleman*, 501 U.S. at 750.

Respondent does not argue that Flores has procedurally defaulted his single ground for relief. The court will, therefore, examine the merits of this claim.

III

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus. As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence. *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000); *Miller v. Francis*, 269 F.3d 609, 613-14 (6th Cir. 2001). Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction. *Harris v. Stovall*, 212 F.3d 940, 943-44 (6th Cir. 2000).

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state

8

>court. Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* ... clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 405 (emphasis added by the quoting court). A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result. *Id.* "A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases." *Id.* A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand. *Doan v. Brigano*, 237 F.3d 722, 729-31 (2001). If a court fails to identify the correct legal principal at issue, the "unreasonable application of" clause does not apply. *Id.* at 730.

"[A] determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The petitioner, however, may rebut "the presumption of correctness by clear and convincing evidence." *Id.* The magistrate judge will consider Flores' claim under the deferential standard of review accorded the state court's determination of a prisoner's constitutional claims.

Flores argues that he did not receive a fair trial because the state failed to disclose until after the trial that Szymanski lied when he told Ackley that he received a small sample of marijuana from Flores when, in fact, he purchased a pound of marijuana from Flores. Ackley testified as to Szymanski's reliability at the suppression hearing and testified at trial

9

that Szymanski had gotten a small sample of marijuana from Flores. Flores contends that the failure to reveal evidence which could have been used to impeach Szymanski's truthfulness violated the holding in *Brady v. State of Maryland*, 373 U.S. 83 (1963), and that there is a reasonable probability that this failure to disclose affected the outcome of the trial.

In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. Both exculpatory evidence and impeachment evidence fall within the rule in *Brady*. *United States v. Bagley*, 473 U.S. 667, 676 (1985). If a prosecutor fails to disclose evidence favorable to the defendant, "due process is violated . . . 'only if there is a reasonable likelihood that the testimony could have affected the judgment of the trier of fact.'" *Id.* at 681-82 (quoting *United States v. Valenzuela-Bernal*, 458 U.S. 858, 874 (1982)). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682 (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). In sum, "[t]here are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

The state appellate court examining the assignments of error related to this ground for relief made the following relevant findings of fact and conclusions of law:

{¶ 16} Under appellant's first assignment of error, he argues that pursuant to Crim.R.

10

16(B)(1)(f), and Crim.R. 16(D), the state was required to disclose the officer notes as evidence favorable to appellant because these notes revealed problems with the informant's credibility as observed by Agent Ackley. Appellant further contends that the state's failure to correct Agent Ackley's testimony relative to the informant's reliability and/or credibility constituted misconduct that deprived him of his due process right to a fair trial.

{¶ 17} Although Crim.R. 16(B)(2) provides that generally, reports, memoranda, or other internal documents made by the prosecuting attorney or his agents are not discoverable, Crim.R. 16(B)(1)(f) provides an exception for disclosure by the prosecuting attorney of evidence "favorable to the defendant and material either to guilt or punishment." Regarding any prosecutorial misconduct, the standard of review is to determine whether the prosecutor's misconduct may have been so egregious so as to deny the defendant the fundamental right to a fair trial. *State v. Iocona,* 93 Ohio St.3d 83, 104, 752 N.E.2d 937, 2001-Ohio-1292, citing *State v. Staten* (1984), 14 Ohio App.3d 78, 85, 470 N.E.2d 249.

{¶ 18} We find that Crim.R. 16(B)(1)(f) does not apply to the undisclosed officer notes because they are not "favorable" to appellant. The court understands appellant's contention that the officer notes demonstrate that Agent Ackley questioned the informant's credibility on one point-how much marijuana he received from appellant and whether he bought it. However, stepping back and viewing the alternative version of the facts on this point, we agree with the state's contention that this evidence was more prejudicial to appellant's defense than probative of the informant's credibility. It would certainly be more damaging to appellant's case to have evidence presented that he sold the informant a pound of marijuana rather than gave him a sample. Therefore, the officer notes which contain the alternative version of the facts of the transaction between appellant and the informant are not "favorable" to appellant.

{¶ 19} Regarding the state's alleged misconduct in failing to correct "false" testimony of Agent Ackley, many of the excerpts of Agent Ackley's testimony cited by appellant were taken from the suppression hearing in which the general topic was the informant's reliability at the time that Agent Ackley signed his August 8, 2003 affidavit. In addition, at trial Agent Ackley, testifying regarding what the informant told him on August 7, 2003, stated that "at that point" the informant did not tell Agent Ackley that appellant sold marijuana to the informant. Based on the foregoing, we find that Agent Ackley's testimony did not need to be "corrected" and there was no misconduct by the state. Accordingly, appellant's first assignment of error is not well-taken.

{¶ 20} In appellant's fourth and fifth assignments of error, he contends that the "newly discovered" information in the officer notes, which he characterizes as "exculpatory," creates a strong probability that a different result would be reached at a second trial on both the suppression as well as the trial issues. We disagree.

{¶ 21} Regarding appellant's challenge to the trial court's denial of his motion to suppress, appellate review of a decision on a motion to suppress presents a mixed question of law and fact. *State v. Davis* (1999), 133 Ohio App.3d 114, 117, 726 N.E.2d 1092. Since a trial court deciding the motion to suppress acts as a factfinder, an appellate court must accept the trial court's findings of fact as true if supported by competent, credible evidence. *State v. Kobi* (1997), 122 Ohio App.3d 160, 167-168, 701 N.E.2d 420. However, an appellate court reviews de novo the trial court's application of the law to the facts. Id. Further, "[w]hen a trial court evaluates whether an informant provides either reasonable suspicion or probable cause, the 'totality of the circumstances' standard must be used." *State v. Jones* (May 7, 1999), 6th Dist. No. S-98-033, citing *Illinois v. Gates* (1983), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527. Under the totality of the circumstances standard, "the basis of knowledge and credibility or reliability of the informant are just two of the factors to be considered by the judge in determining whether probable cause exists to believe that evidence will be found in a particular place." *Jones.*

{¶ 22} Appellant's challenge to the trial court's denial of his motion to suppress focuses primarily on reliability issues regarding the informant in light of Agent Ackley's officer notes. In his August 8, 2003, affidavit upon which the trial court issued the warrant, Agent Ackley stated that the informant had received a "small amount" of marijuana from appellant. At the time of this affidavit, apparently Agent Ackley had no information to the contrary. It was not until his September 29, 2003 officer notes that he concluded, "[a]s this investigation continued, Deputy Ackley uncovered information finding that [the informant] did not just receive a sample of the marijuana from [appellant] that he turned over to Deputy Ackley on August 7, 2003. [The informant] actually received one pound of marijuana that he resold for a profit, without telling Deputy Ackley." Further, Agent Ackley also stated in his affidavit that part of the basis for the informant's reliability was that the informant recently led the Wood County Sheriff's Office to a stolen tractor. Agent Ackley confirmed this in his testimony at the suppression hearing. In addition, Agent Ackley stated in his affidavit that several reliable confidential sources gave information about appellant supplying them with marijuana and cocaine. Thus, the trial court did not err in finding at the time of Agent Ackley's affidavit and the issuance of the warrant, that the informant was reliable under the totality of the circumstances. Finally, the August 8, 2003, affidavit related the facts of the informant's transaction with appellant just the evening before on August 7, 2003. The affidavit further stated that appellant told the informant that he had a large amount of marijuana at his residence. Therefore, the information in the affidavit was not stale and there was a nexus between the criminal activity and the residence.

{¶ 23} Because the trial court's findings of fact were supported by competent, credible evidence, the affidavit provided sufficient information to establish probable cause to believe that there was a fair probability that evidence of a crime would be found at appellant's residence. Thus, the search warrant was properly issued. In light of this finding, we need not address appellant's argument regarding the good

12

faith exception under *U.S. v. Leon* (1984), 468 U.S. 897. See *State v. Schmitz* (Mar. 1, 1996), 6th Dist. No. S-95-031. Based on the foregoing, the trial court did not err in denying appellant's motion to suppress the evidence found as a result of the search warrant. Accordingly, appellant's fifth assignment of error is not well-taken.

{¶ 24} Regarding appellant's challenge to the trial court's denial of his motion for a new trial based on newly discovered evidence pursuant to Crim.R. 33(A)(6), we have recently stated:

{¶ 25} "The decision to grant or deny a new trial on grounds of newly discovered evidence is within the sound discretion of the trial court. *State v. Hawkins* (1993), 66 Ohio St.3d 339, 350, 612 N.E.2d 1227; *State v. Williams* (1975), 43 Ohio St.2d 88, 330 N.E.2d 891, paragraph two of the syllabus. To warrant the granting of a new trial, the defendant must demonstrate that the new evidence '(1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence. * * * ' *State v. Petro* (1947), 148 Ohio St. 505, 76 N.E.2d 370, syllabus." *State v. Eubank,* 6th Dist. No.L-03-1057, 2004-Ohio-890, at ¶ 16.

{¶ 26} Regarding the first and fourth prongs of *Petro,* as already noted, we do not find the information in the officer's notes to the effect that appellant may have sold a pound of marijuana to the informant rather that gave him a sample to be favorable or exculpatory to appellant. Regarding the second and third prongs, the second version of the facts revealed in the officer notes (that appellant sold the informant a pound rather than gave him a sample) would have been known to appellant at the time of trial. He was free to challenge Agent Ackley on that point under cross examination but chose not to do so. Regarding the fifth prong, appellant contends that the new evidence in the officer's report would not be cumulative of former suppression and trial evidence of the informant's credibility because it also demonstrates that Agent Ackley is not credible since essentially he testified that there was no basis for the informant to be determined unreliable. As we have concluded in analyzing appellant's first assignment of error, Agent Ackley's testimony did not need "correcting." Further, despite appellant's attempt to add an extra layer onto the credibility issues, we agree with the trial court that the information in the officer's report is cumulative of the former evidence in that it shares that same goal: proving that the confidential informant was not reliable. Finally, regarding the sixth prong of *Petro,* we agree with the trial court that the only use to which the officer notes could be put in a new trial would be to impeach or contradict the former evidence. Therefore, the trial court did not abuse its discretion when it denied appellant's motion for a new trial. Accordingly, appellant's fourth assignment of error is not well-taken.

*Flores*, 2005 WL 1532650 at *2-*4. Thus, the state appellate court found that (1) Ackley

13

had not been aware at the time of the suppression hearing or at trial that his informant had lied to him regarding the amount of marijuana he received from Flores and how he had obtained it; (2) the trial court was correct in not suppressing evidence obtained from the search of Flores' home; (3) the outcome of the suppression hearing would not have been different had the truth of Flores' dealings with Szymanski and his lying to Ackley been known; (4) the undisclosed information was not favorable to Flores; and (5) the undisclosed information was known to Flores.  Flores does not present clear and convincing evidence that any of the state appellate court's findings of fact were erroneous.

Even if this court assumes *contra* the state appellate court that Ackley's notes were exculpatory and that Ackley and the prosecutor should have known this and turned them over to Flores, there would still be no violation of due process.  The primary evidence against Flores was the marijuana discovered in the search of his home.  This evidence would have been sufficient to convict Flores regardless of how credible or not credible the trier of fact believed Szymanski to be.  The state appellate court found that even if Szymanski's duplicity had been known, it would have made no difference as regards Flores' motion to suppress the evidence of the search.  The marijuana obtained from the search would still have been used against Flores at his trial.  Moreover, because Szymanski did not testify at the trial, it cannot be said that Ackley's notes had much value to Flores as a means of impeaching Szymanski's truthfulness.  Finally, inasmuch as Flores *knew* that Szymanski had lied to Ackley and chose to say nothing about this in cross-examining Ackley, Flores must have decided that the inculpatory effect of revealing how Szymanski actually obtained the marijuana he gave Ackley outweighed its exculpatory potential.  There is no reason to believe that Flores would have viewed the matter

14

differently if he had access to Ackley's notes. For all these reasons, it cannot be said that there is a reasonable likelihood that had the supposedly exculpatory information been revealed to the defense the judgment of the trier of fact might have been different. The magistrate judge recommends, therefore, that the court overrule Flores' sole ground for relief.

III

For the reasons given above the magistrate judge recommends that the court deny Flores' petition for a writ of habeas corpus.


Date: May 21, 2007  /s/Patricia A. Hemann
  Patricia A. Hemann
  United States Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).